UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

|  |  |
|---|---|
| JOSEPH McALEAR, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>nCINO, INC. and LIVE OAK BANCSHARES, INC.,<br><br>    Defendants. | CASE NO.  7:21-cv-47-M<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**<br><br>Fed. R. Civ. P. 23(e) |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................................... 1

    A.    Procedural Background ...................................................................................... 1

    B.    Terms of the Settlement .................................................................................... 3

        1.    Cash Payment ...................................................................................... 3

        2.    Litigation Cooperation and Prohibition on Conduct ................................ 4

        3.    Release of Claims ................................................................................ 4

        4.    Opt-Out Period and Objections ............................................................. 5

III. PROCEDURE FOR SETTLEMENT APPROVAL ..................................................... 5

IV.  ARGUMENT ............................................................................................................... 7

    A.    The Settlements are Excellent, Fair, and Reasonable ........................................ 8

        1.    A $4.65 Million Cash Recovery ............................................................ 8

        2.    Non-Monetary Relief ........................................................................... 9

    B.    Mr. McAlear and Class Counsel Vigorously Advanced the Settlement Class's Interests ............................................................................................. 10

    C.    The Allocation Plan Compensates Settlement Class Members Based on The Degree of Harm ...................................................................................... 11

    D.    The Proposed *Cy Pres* Recipient Is Appropriate ............................................ 12

    E.    The Notice Effectively Apprised Settlement Class Members of Their Rights ............................................................................................................ 13

    F.    The Requirements for Settlement Class Certification Are Met .......................... 14

        1.    The Settlement Class is Sufficiently Numerous And Joinder is Impracticable ...................................................................................... 15

        2.    There Are Common Questions of Law And Fact ................................... 15

        3.    Mr. McAlear's Claims Are Typical of Those of The Settlement Class .................................................................................................. 16

        4.    Mr. McAlear Adequately Represents The Settlement Class .................... 16

        5.    The Class Satisfies the Requirements of Rule 23(b)(3) .......................... 17

V.   CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Fund*,
568 U.S. 455 (2013) ............................................................................................................. 18

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) ..................................................................................................... 9

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) ............................................................................................. 12

*Brunson v. La.-Pac. Corp.*,
818 F.Supp.2d 922 (D.S.C. 2011) .......................................................................................... 8

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
6 F.3d 177 (4th Cir. 1993) ................................................................................................... 15

*Cerrato v. Durham Pub. Schs. Bd. of Educ.*,
No. 1:16CV1431, 2017 WL 2983301 (M.D.N.C. Mar. 17, 2017) ...................................... 15

*Clarke v. Duke Univ.*,
Nos. 1:16-CV-1044, 1:18-CV-722, 2019 WL 2588029 (M.D.N.C. June 24, 2019) ............ 9

*Covarrubias v. Capt. Charlie's Seafood, Inc.*,
No. 2:10-CV-10-F, 2011 WL 2690531 (E.D.N.C. July 6, 2011) ......................................... 14

*Cox v. Branch Banking & Trust Co.*,
No. 5:17-cv-1982, 2019 WL 164814 (S.D. W.Va. Jan. 10, 2019) .................................... 7, 9

*Domonoske v. Bank of Am., N.A.*,
790 F.Supp.2d 466 (W.D. Va. 2011) ................................................................................... 14

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2004 WL 6248154 (E.D. Pa. Sept. 27, 2004) ............................................ 9

*In re Domestic Airline Travel Antitrust Litig.*,
378 F. Supp. 3d 10 (D.D.C. 2019) ....................................................................................... 10

*In re Flonase Antitrust Litig.*,
291 F.R.D. 93 (E.D. Pa. 2013) ............................................................................................. 12

*In re High-Tech Antitrust Litig.*,
No. 11-cv-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sep. 2, 2015) ................................ 12

*In re High-Tech Emp. Antitrust Litig.*,
985 F.Supp.2d 1167 (N.D.Cal. Oct. 24, 2013) ................................................................... 18

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ................................................................................................. 7

*In re Mid-Atl. Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. May 27, 1983) .......................................................................... 10

*In re Polyester Staple Antitrust Litig.*,
MDL No. 3:03CV1516, 2007 WL 2111380 (W.D.N.C. July 19, 2007) .............................. 16

*In re Titanium Dioxide Antitrust Litig.*,
284 F.R.D. 328 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013) ........... 15, 16, 17

2386991.2
3/28/22

*Klier v. Elf Atochem N. Am., Inc.*,
658 F.3d 468 (5th Cir. 2011) ................................................. 12
*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................. 12
*Lienhart v. Dryvit Sys., Inc.*,
255 F.3d 138 (4th Cir. 2001) ................................................. 15
*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007)................................................. 12
*Olvera-Morales v. Int'l Lab. Mgmt. Corp.*,
246 F.R.D. 250 (M.D.N.C. 2007) ................................................. 16
*Scardelletti v. Debarr*,
43 Fed. Appx. 525 (4th Cr. 2002) ................................................. 7
*Seaman v. Duke Univ.*,
No. 1:15-cv-00462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) ................. 8, 17
*Seaman v. Duke Univ.*,
No. 1:15-cv-00462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018) ................. 15, 16, 17

**Rules**
Fed. R. Civ. P. 23(a) ................................................. 15
Fed. R. Civ. P. 23(a)(1) ................................................. 14
Fed. R. Civ. P. 23(a)(4) ................................................. 14
Fed. R. Civ. P. 23(b) ................................................. 15
Fed. R. Civ. P. 23(b)(3)................................................. 15, 17
Fed. R. Civ. P. 23(e) ................................................. 5, 7
Fed. R. Civ. P. 23(e)(1)(B) ................................................. 14
Fed. R. Civ. P. 23(e)(2)................................................. 6

**Treatises**
1 Herbert B. Newberg & Alba Conte,
*Newberg On Class Actions* § 3.10 (4th ed. 2002)................................................. 15
*Manual for Complex Litigation* § 21.632 (4th ed. 2004)................................................. 5
William B. Rubinstein, 4 *Newberg on Class Actions* § 12:32 (5th ed. 2019) ................. 13
William B. Rubinstein, 4 *Newberg on Class Actions* § 13:1 (5th ed. 2019) ................. 6

2386991.2
3/28/22

# I.    INTRODUCTION

Plaintiff Joseph McAlear and Defendant Live Oak Bancshares Inc. ("Live Oak") and Defendant-Intervenor Apiture Inc. ("Apiture") agreed to resolve the Settlement Class's claims for $4.65 million and significant non-monetary relief, including cooperation in the ongoing litigation against non-settling Defendant nCino Inc. ("nCino").  Dkt. Nos. 39-1 & 39-2 (Settlement Agreements).  On November 23, 2021, the Court granted preliminary approval of the Settlements after finding that they are fair, reasonable, and adequate.  Dkt. No. 60.  The Court directed that notice of the Settlements be given to Settlement Class Members so that they could have an opportunity to weigh in, including by opting out or objecting.  *Id.* at 4-5.  The Settlement Administrator has completed the notice program ordered by the Court.  Dkt. No. 80.  Not a single Settlement Class Member objected.  *See* Declaration of Aisha Lange ("Lange Decl."), filed herewith, ¶ 7.  Only one individual out of 1,926 Settlement Class Members opted out.  *Id*. ¶ 6.  Thus, over 99% of Class Members chose to release their claims in exchange for their share of the Settlements.  This support confirms the Court's preliminary conclusions.

Plaintiff respectfully requests that the Court now grant final approval to the Settlements and authorize disbursement of funds to the Settlement Class.

# II.    STATEMENT OF FACTS

## A.    Procedural Background

The procedural history of this case is set forth in Plaintiff's motion for preliminary approval.  Dkt. No. 38.  Plaintiff briefly recounts the most significant milestones here.  Plaintiff filed the complaint on March 12, 2021 alleging that Live Oak, nCino, and Apiture (hereinafter,

-1-

the "Defendants")[1] conspired to restrain competition and reduce compensation for their

employees in Wilmington, North Carolina (the "No-Hire Agreement"). Dkt. No. 1, ¶ 1. The

complaint alleges that Defendants are the leading employers for financial technology employees

in Wilmington and that absent the No-Hire Agreement, the Defendants would have recruited and

hired employees from each other, driving employee pay up. *Id.*, ¶¶ 20, 25. Plaintiff filed an

Amended Complaint on September 29, 2021. Dkt. No. 35.

After a lengthy and arms-length mediation, Plaintiff reached settlement agreements with

Live Oak and with Apiture on October 12, 2021. The Court preliminarily approved the

Settlements on November 23, 2021. Dkt. No. 60. Class counsel filed their motion for attorneys'

fees and costs, and a service award for Mr. McAlear, on February 24, 2022. Dkt. No. 67.

The parties and the Settlement Administrator implemented the notice program according

to the Court's order. Live Oak, Apiture, and nCino provided Settlement Class member data to

the Settlement Administrator, Settlement Services, Inc. ("SSI"), on or before January 21, 2022.

Dkt. No. 80 ¶ 5. On February 11, 2022, SSI sent the notice approved by the Court to Settlement

Class Members by mail and e-mail. *Id.*, ¶ 6. SSI also established a website for the Settlement

Class that included all Court documents concerning these Settlements, as well as a dedicated

phone line for inquiries. *Id.*

Class Counsel and Live Oak subsequently determined that the information for fifteen

individuals who are Settlement Class Members had not been provided to the SSI ("Additional

Class Members"). On March 11, 2022, Live Oak provided data for the Additional Class

Members, and SSI sent notice to them by mail and by email that same day. Dkt. No. 80 ¶ 7. The

---

[1] Apiture is a Defendant-Intervenor. *See* Dkt. No. 59 (granting Apiture's motion to intervene).
For ease of reference and to mirror the verbiage in the Settlement Agreements, all three
companies will be referred to as "Defendants" hereinafter.

notice was the same as that sent to all other Settlement Class Members, except the opt-out and objection deadline was modified to April 10, 2022, which is thirty days from the sending of notice. *Id.* The website was updated to note this modification for the Additional Class Members only. *Id.*

The Notice program has been effective. The website has registered over 488 unique visits. Lange Decl. ¶ 4. Only 98 mailed notices were returned as undeliverable, and SSI was able to identify corrected addresses for 86 of those people. *Id.* ¶ 2. Additionally, SSI has received and responded to 32 Settlement Class Member inquiries. *Id.* ¶ 4. Class Counsel has received one inquiry from a Settlement Class Members and responded directly to that individual. Not a single Settlement Class Member has objected to the Settlements, Mr. McAlear's request for a service award, or Class Counsel's request for attorney's fees and expenses. *Id.* ¶ 7. In addition, only one individual opted out of the Settlements. *Id.* ¶ 6. Class Counsel will update the Court with final figures reflecting the responses of the Additional Class Members, if any, on April 11, 2022, the deadline for filing their reply in support of final approval. Dkt. No. 79.

### B. Terms of the Settlement

The Settlement Agreements were previously filed as an attachment to the Declaration of Anne B. Shaver in Support of Plaintiff's Unopposed Motion for Preliminary Approval. Dkt. Nos. 39-1 & 39-2 (hereinafter "Settlements"). The Settlement Class is the same one preliminary approved by the Court on November 23, 2021. Dkt. No. 60.

### 1. Cash Payment

Live Oak paid $3,877,584 and Apiture paid $777,274 into a non-reversionary common fund. Settlements, § I.A.28. Each Settlement Class Member's recovery will be calculated in approximate proportion to their alleged harm, consistent with Plaintiff's damages theory. *See* Dkt. No. 39-3 (Plan of Allocation). This formula accounts for the fact that Settlement Class

Members who earned more or worked longer were allegedly harmed more than those who worked for a shorter period or earned lower compensation. *Id.*

### 2. Litigation Cooperation and Prohibition on Conduct

Live Oak and Apiture will provide extensive cooperation to Plaintiff in his on-going litigation against non-settling Defendant nCino, including: (1) providing a summary of relevant facts and documents supporting those facts, and answering reasonable follow-up questions and reasonable follow-up requests for relevant documents; (2) making up to four current employees available for interviews; (3) making up to two current employees available for depositions; (4) providing up to two declarations from current employees; (5) providing declarations to authenticate documents; and (6) producing at least two employees at trial. Settlements § III.B.

Live Oak and Apiture will also agree that they will not attempt to enter into, enter into, maintain or enforce any agreements with another person or entity to refrain from soliciting, recruiting, hiring, or otherwise competing for employees of the other person or entity, except for provisions recognized to be lawful as ancillary to a legitimate business collaboration. Settlements § III.C. These conduct provisions will remain in place for four years. *Id.*

### 3. Release of Claims

The Settlements release Settlement Class Members' claims against Live Oak and Apiture (but *not* nCino) relating to the facts and activities alleged in the Amended Complaint or any other purported restraint on competition for employment or compensation of the Settlement Class between Live Oak, Apiture, or nCino, up to the effective date of the Settlements. Settlements § V. The release does *not* include breach of contract or other employment claims Settlement Class Members may have against Live Oak or Apiture regarding any alleged compensation owed to the Settlement Class Member, nor claims related to non-compete agreements between Settlement Class Members and Live Oak or Apiture. *Id.*

### 4. <u>Opt-Out Period and Objections</u>

Settlement Class Members who wished to opt out of the Settlement Class were able to do so by submitting a request for exclusion to the Settlement Administrator. Settlements § II.E. The opt-out period ended 30 calendar days after SSI mailed notice, or March 14, 2022. *Id.* For the fifteen Additional Class Members to whom notice was sent on March 11, the opt-out and objection period will end on April 10, 2022. Dkt. No. 79. Settlement Class Members also had the opportunity to object to the Settlements, but none have done so.

## III. <u>PROCEDURE FOR SETTLEMENT APPROVAL</u>

A class action may not be settled without court approval. *See* Fed. R. Civ. P. 23(e). Approval is a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004). The committee notes to the 2018 amendments to Rule 23 discuss the breadth and types of information parties should submit to the court when seeking preliminary approval of a settlement class. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. As a general standard, the notes state that the proponents of the settlement should ordinarily provide the court at preliminary approval with "all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members." *Id.* That guidance exemplifies what has been called the "frontloading" effect of the 2018 amendments. This first step, the frontloading work of preliminary approval, is now behind us: the Court previously granted Plaintiff's motion to preliminarily approve the settlement and direct notice to the class. Dkt. No. 60.

After the Court directs notice, "notice is sent to the class describing the terms of the proposed settlement, class members are given an opportunity to object or . . . to opt out of the settlement, and the court holds a fairness hearing at which class members may appear and support or object to the settlement." 4 William B. Rubinstein et al., *Newberg on Class Actions* §

13:1 (5th ed. 2019) ("*Newberg*"). Finally, "taking account of all the information learned during that process, the court decides whether or not to give 'final approval' of the settlement." *Id.*

Having completed the notice program and provided the Court with all relevant details regarding Settlement Class Member's response to the Settlement (except the response of the fifteen Additional Class Members, which will be submitted to the Court on April 11, 2022), Plaintiff now requests that the Court take the final step of granting final approval of the Settlement.

The court may approve a class action settlement only after finding that it is fair, reasonable, and adequate. The 2018 amendments to Rule 23 provide new guidance to courts to determine whether settlements are fair, reasonable, and adequate. As amended, Rule 23(e)(2) specifically instructs courts to consider whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). While the text of Rule 23 has been expanded, the purpose of the amendment was not to increase the factors courts consider but rather to re-focus settlement

-6-

approval on the core concerns. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

In determining whether a settlement is fair, the district court examines whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the relevant area of class action litigation." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991); *see also Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002). The court should also "be satisfied that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Cox v. Branch Banking & Tr. Co.*, No. 5:17-cv-1982, 2019 WL 164814, at *2 (S.D. W.Va. Jan. 10, 2019) (citation and omitted).

In considering the settlement's adequacy, the court considers the "(1) relative strength of [the plaintiffs'] case on the merits, (2) existence of any difficulties of proof or strong defenses [the plaintiffs] are likely to encounter if the case goes to trial, (3) anticipated duration and expense of additional litigation, (4) solvency of [the defendants] and likelihood of recovery of a litigated judgment, and (5) degree of opposition to the settlement." *Id.*

## IV.  ARGUMENT

As the Court preliminarily found, the Settlements are fair, reasonable, and adequate. The Settlement Class's clear support for the Settlements, following an appropriate notice process, confirms the Court's preliminary conclusion. The Court should now grant final approval of the Settlements.

-7-

### A. The Settlements are Excellent, Fair, and Reasonable

#### 1. A $4.65 Million Cash Recovery

The Court already held that, in light of the risks and length of continued litigation, the $4.65 million monetary recovery is "an excellent result." Dkt. No 60 at 4. As explained in the motion for preliminary approval, the settlement amount is excellent in light of the high-risk and complex nature of Plaintiff's claims. Similar no-poach class cases have taken years to resolve. In *Seaman v. Duke Univ.*, No. 1:15-cv-00462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019), the parties had completed all fact and expert discovery, litigated class certification, litigated one interlocutory appeal and an attempted appeal from the court's class certification order, filed and fully argued 26 briefs regarding summary judgment and *Daubert* issues, and were only a few months shy of trial before they settled nearly four years after the case was filed. Dkt. No. 39, ¶ 11 (Shaver Decl. ISO Preliminary Approval). Similarly, in *In re High-Tech Emp. Antitrust Litig.*, No. 5:11-cv-02509-LHK (N.D. Cal.), the parties fully litigated class certification and summary judgment before a settlement was reached with the remaining defendants after three years of litigation. *Id.* That Plaintiff obtained a better recovery here, in terms of percentage of overall compensation, and significant cooperation, at the outset of the litigation when so many risks remain, counsels in favor of approval because "continued litigation risks the possibility of little or no recovery for Plaintiffs." *See Brunson v. La.-Pac. Corp.*, 818 F.Supp.2d 922, 926 (D.S.C. 2011). Settling the case at this juncture "affords a substantial and immediate remedy for the Class Members while obviating the need for further expensive and time-consuming discovery and motion practice; a lengthy, uncertain and expensive trial; and appeals on numerous complex legal and factual issues." *Id.* at 927 (finding that the fairness of the settlement weighed in favor of final approval, particularly considering the risk, complexity, and expense of continued litigation).

-8-

In short, these risks counsel in favor of the Settlements. Class Counsel, based on its familiarity with the record, prior work in *Seaman*, *In re High-Tech*, *Binotti v. Duke*, No. 20-cv-470 (M.D.N.C.) and *In re Railway Indus. Emp. No-Poach Antitrust Litig.*, No. 2:18-mc-00798-JFC (W.D. Pa.), and in consultation with Mr. McAlear, weighed these risks and concluded that a guarantee of $4.65 million, combined with the non-monetary provisions of the Settlements, would better serve the Settlement Class's interests than gambling with dispositive motions, potential appeals, and trial. *See Cox*, 2019 WL 164814, at *2 (recognizing that class counsel "who are both experienced in prosecuting and defending complex class action claims" and with a "clear view of the strengths and weaknesses of their cases" are "in a strong position to make an informed decision regarding the reasonableness of a potential settlement" (citation omitted)).

Finally, the Settlements are significant in light of Live Oak and Apiture's "market share" of the employee Settlement Class here. nCino is the largest employer of the three, and nCino continues to be jointly and severally liable to the totality of the proposed class for the totality of the class's damages. *See*, *e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 6248154, at *8 (E.D. Pa. Sept. 27, 2004) (approving partial settlement's fairness in consideration of the defendant's market share).

### 2. Non-Monetary Relief

Courts also consider non-monetary relief that benefits the class when assessing whether a proposed settlement is fair, adequate, and reasonable. *Clarke v. Duke Univ.*, Nos. 1:16-CV-1044, 1:18-CV-722, 2019 WL 2588029, at *5 (M.D.N.C. June 24, 2019) (nonmonetary settlement relief to class members supported settlement approval); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("[N]onpecuniary benefits . . . may support a settlement."). Here, the non-monetary provisions confer substantial additional benefits to the Settlement Class. In particular, Live Oak and Apiture agree to important cooperation provisions with Plaintiff, including a

-9-

proffer of relevant facts and documents, responding to reasonable follow-up questions and requests for documents, making its employees available for interviews, depositions, declarations, and trial testimony, and assisting with the authentication of evidence. Settlements § III.B. Such cooperation is valuable to the Settlement Class as Plaintiff continues to litigate this case. *See In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. May 27, 1983) (recognizing that the defendant's commitment to "cooperate with plaintiffs will certainly benefit the classes, and is an appropriate factor for the court to consider in approving settlement"); *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (emphasizing the importance of cooperation provisions "to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants.") (citation omitted).

In addition, pursuant to the Settlements, Live Oak and Apiture agree to refrain from entering into any no-hire agreement for the next four years, except for a lawful agreement (such as a non-compete agreement in an employment agreement) that is ancillary to a legitimate business collaboration. Settlements § III.C.1-6. Any such ancillary agreements must be made in writing and satisfy a number of requirements so that their lawfulness can be readily ascertained. *Id*. The prohibition on the kind of No-Hire Agreement alleged in this Action will benefit class members by ensuring mobility and job opportunities. This robust non-monetary relief that clearly benefits the Settlement Class supports settlement approval here.

### B. Mr. McAlear and Class Counsel Vigorously Advanced the Settlement Class's Interests

Mr. McAlear has represented the Settlement Class well. This is the first and only case asserting damages claims for employees regarding the allegations in Mr. McAlear's complaint. Without the efforts of Mr. McAlear, these claims would have gone unaddressed, the conduct would still be on-going, and the Settlement Class would not receive compensation for the

-10-

misconduct Mr. McAlear alleges.  After filing this action, Mr. McAlear closely monitored developments, helped the undersigned negotiate and evaluate possible settlements, and attended the mediation that ultimately resulted in an agreement.  Dkt. No. 71 ¶ 6 (McAlear Decl. ISO Fees, Costs, and Service Award).

Class Counsel have also advanced the Settlement Class's interests. Class Counsel invested significant time in investigating the case before filing the Complaint.  Class Counsel represented Plaintiff McAlear in an interview about the allegations with attorneys from the United States Department of Justice.  Dkt. No. 69 ¶ 12 (Shaver Decl. ISO Fees, Costs, and Service Award).  Class Counsel then spent almost seven months negotiating the settlements, including obtaining and analyzing the class's compensation data, and retaining an experienced economic consultant to compare the data to publicly available regional wage data for software engineers.  *Id.*  Class Counsel represented the class not just at mediation, but for several weeks thereafter in robust negotiations regarding the full terms of the agreements.  *Id.*  Class Counsel then moved for preliminary approval of the settlements, and negotiated a protective order to allow Live Oak, Apiture, and nCino to provide data to the Settlement Administrator.  *Id.*, ¶ 14. Class Counsel has also overseen distribution of notice to the class, including creation of a dedicated website, and has spent considerable time resolving data-related questions with the Settlement Administrator.  *Id.*

In sum, the Court should conclude that Class Counsel and Mr. McAlear have vigorously represented the Class's interests.

**C.     The Allocation Plan Compensates Settlement Class Members Based on The Degree of Harm**

The Court previously concluded that "the proposed allocation plan is fair and reasonable, as it will compensate Class Members on a pro rata basis according to the degree of alleged harm

they suffered." Dkt. No. 60 at 4. Specifically, each Settlement Class Member will receive an amount based on the total compensation they received from Live Oak, nCino, or Apiture during the Class Period, divided by the total compensation received by all Settlement Class Members during that time. This formula accounts for the fact that employees who worked longer or with higher salaries were allegedly harmed more. *In re High-Tech Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) (in no-poach case, approving identical allocation plan because it "provides a neutral and uniform metric by which to allocate the Settlement, consistent with Plaintiffs' expert opinions"); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) (observing that allocation plan "need not meet standards of scientific precision" so long as it "[has] a reasonable and rational basis"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 107 (E.D. Pa. 2013) ("In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." (citation omitted)).

No Settlement Class Member has objected to the allocation plan. The Court should affirm that the proposed pro-rata distribution is fair and reasonable.

### D. The Proposed *Cy Pres* Recipient Is Appropriate

"[A] *cy pres* distribution is designed to be a way for a court to put any unclaimed settlement funds to their 'next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007). The doctrine does not require "that settling parties select a *cy pres* recipient that the court or class members would find ideal," but rather only that there be "a substantial nexus to the interests of the class members" in light of "the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (citation omitted). Generally, courts approve *cy pres* distributions

-12-

"only when more redistribution is no longer feasible." *Newberg* § 12:32. Here, a *cy pres* distribution would occur only if redistribution of any unclaimed funds to Class Members would not be economically feasible, *e.g.*, it would cost more to issue and mail checks than is left in the fund. Settlements ¶ IV(A)(6).

Plaintiff proposes that the Court designate the American Antitrust Institute (AAI) as the *cy pres* recipient. AAI is an independent, nonprofit organization devoted to promoting competition that protects consumers, businesses, and society. Its mission includes "research, education, and advocacy on the benefits of competition and the use of antitrust enforcement as a vital component of national and international competition policy."[2] AAI would be a suitable *cy pres* recipient in light of its track record advocating specifically against no-poach agreements on behalf of workers.[3] In Class Counsel's judgment, AAI is an appropriate *cy pres* recipient whose mandate bears a sufficient nexus to this case and to the advancement of Settlement Class Members' interests. Thus, Class Counsel recommends the Court authorize *cy pres* funds to AAI.

E.    <u>The Notice Effectively Apprised Settlement Class Members of Their Rights</u>

As ordered by the Court, SSI has delivered individual notice to Settlement Class Members by mail and e-mail. Dkt. No. 80 ¶ 6. The notice explained the nature of this case, the terms of the proposed Settlements, the requested attorney's fees and costs and service award, and

---

[2] Am. Antitrust Inst., *Mission and History*, https://www.antitrustinstitute.org/about-us/ (last visited July 30, 2021).

[3] *See*, *e.g.*, Randy Stutz, *AAI Issues New White Paper on the Antitrust Treatment of Labor-Market Restraints*, Am. Antitrust Inst. (July 31, 2018), https://www.antitrustinstitute.org/work-product/2246/; Randy Stutz, *AAI Asks FTC and DOJ to Deliver on Promise of Tough Sanctions for Naked Wage-Fixing Agreements (In the Matter of Your Therapy Source)*, Am. Antitrust Inst. (Aug. 31, 2018), https://www.antitrustinstitute.org/work-product/aai-asks-ftc-and-doj-to-deliver-on-promise-of-tough-sanctions-for-naked-wage-fixing-agreements-in-the-matter-of-your-therapy-source/; Diana L. Moss & Randy Stutz, *AAI Says DOJ Too Lenient on Vertical Franchise No-Poaching Agreements*, Am. Antitrust Inst. (May 2, 2019), https://www.antitrustinstitute.org/work-product/aai-says-doj-too-lenient-on-vertical-franchise-no-poaching-agreements/.

-13-

provided Settlement Class Members with an opportunity to opt out or file an objection. Dkt. No. 39-4. All Settlement-related documents as well as the Amended Complaint were also posted to a publicly-accessible website, which included instructions to contact Class Counsel and the Settlement Administrator with questions about the Settlement. The Notice also contained a phone number (also provided on the website) that Settlement Class Members could call to contact SSI. In light of these factors, the notice program comported with the requirements of Rule 23 and due process. *See* Fed. R. Civ. P. 23(e)(1)(B) (notice must be given to class "in a reasonable manner"); *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 472 (W.D. Va. 2011) ("In the context of a class action, the due process requirements of the Fifth Amendment require reasonable notice combined with an opportunity to be heard and withdraw from the class." (citation omitted)). After receiving notice, only one Settlement Class Member opted out of the Settlements, and none objected.

### F. The Requirements for Settlement Class Certification Are Met

Plaintiff also respectfully requests that the Court certify the following Settlement Class:

> All natural person employed by Live Oak, Apiture, or nCino in North Carolina at any time from January 27, 2017, through March 31, 2021. Excluded from the settlement class are: members of the boards of directors; C-suite; executive level managers; and any and all judges and justices and chambers' staff assigned to adjudicate any aspect of this litigation. (Settlements §I.A.24.)

When a settlement is reached prior to Rule 23 certification, a class may be certified solely for the purposes of settlement. *Covarrubias v. Capt. Charlie's Seafood, Inc*., No. 2:10-CV-10-F, 2011 WL 2690531 (E.D.N.C. July 6, 2011) ("There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation.") (citation omitted). The settlement class must meet the four prerequisites of Federal Rules of Civil Procedure 23(a)(1) through (4) – numerosity, commonality, typicality, and

-14-

adequacy – as well as the requirements of Rule 23(b).  *Id.*  However, "courts need not inquire whether the class will be manageable at trial because settlement renders trial unnecessary."  *Id*; *see also Cerrato v. Durham Pub. Schs. Bd. of Educ.*, No. 1:16CV1431, 2017 WL 2983301, at *2 (M.D.N.C. Mar. 17, 2017).  Here, the parties "stipulate for purposes of settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to Court approval, the Settlement Class shall be certified for settlement purposes." Settlements, § II.D.

### 1. The Settlement Class is Sufficiently Numerous And Joinder is Impracticable

The proposed Settlement Class includes approximately 1,926 employees who worked for nCino, Live Oak, or Apiture between January 27, 2017 and March 31, 2021.  This satisfies numerosity.  *See Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993); *Seaman v. Duke Univ.*, No. 1:15-cv-00462, 2018 WL 671239, at *9 (M.D.N.C. Feb. 1, 2018).

### 2. There Are Common Questions of Law And Fact

"Generally speaking, in the antitrust context, 'courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the commonality requirement.'"  *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013) (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg On Class Actions* § 3.10 (4th ed. 2002)).  This case is no exception; the common question of whether Defendants entered into an unlawful agreement is "dispositive and over-shadow[s] other issues."  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).  For this reason, "the existence of the alleged conspiracy, standing alone, is sufficient to establish commonality."  *Titanium Dioxide*, 284 F.R.D. at 338; *Seaman*, 2018 WL 671239, at*10.

There are numerous other common issues of law and fact, including (1) whether Defendants had a No-Hire Agreement during this time period; (2) whether the No-Hire Agreement restrained competition for employees; and (3) whether Plaintiff and the Settlement Class have suffered antitrust injury. *See*, *e.g.*, *Seaman*, 2018 WL 671239, at *10 (finding common issues of law and fact in no-poach case).

### 3. Mr. McAlear's Claims Are Typical of Those of The Settlement Class

To satisfy typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *In re Polyester Staple Antitrust Litig.*, MDL No. 3:03CV1516, 2007 WL 2111380, at *10 (W.D.N.C. July 19, 2007) (citation and quotation omitted). "[I]n the antitrust context, typicality will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *Titanium Dioxide*, 284 F.R.D. at 338-39 (citations and quotation omitted). Mr. McAlear and all members of the Settlement Class allege the same antitrust violations by Defendants. Typicality is satisfied. *See*, *e.g.*, *Seaman*, 2018 WL 671239, at*10.

### 4. Mr. McAlear Adequately Represents The Settlement Class

Adequacy is satisfied where the plaintiff "ha[s] common interests with unnamed members of the class and . . . will vigorously prosecute the interests of the class through qualified counsel." *Olvera-Morales v. Int'l Lab. Mgmt. Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007) (citation and quotation omitted). Here, Mr. McAlear and the Settlement Class have the same interest in proving that Defendants' conduct violated the antitrust laws and suppressed compensation and mobility as a result. Mr. McAlear and his counsel do not have any conflicts of interest with Settlement Class Members. As discussed above, Mr. McAlear has dutifully performed his obligations as a class representative. Further, Mr. McAlear has retained two highly experienced law firms who have an extensive record of success in prosecuting antitrust

-16-

cases, employment cases, and class actions.  Adequacy is met.  *See*, *e.g.*, *Seaman*, 2019 WL 4674758, at*4 (noting Plaintiff's counsel "are experienced in employment, antitrust, and class action cases, having brought and successfully resolved similar cases in the past").

### 5.    The Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) sets forth two requirements. First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3).  Second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.  Both prongs are satisfied here.

Predominance.  Rule 23(b)(3)  does not require that all elements of a claim be susceptible to class-wide proof; rather, it only requires that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  Here, the significant legal and factual questions pertinent to the underlying cause of action are whether (1) Defendants entered an agreement violating the antitrust law; (2) the agreement injured Plaintiff and the Settlement Class; and (3) whether damages can be measured through a common method.  *See Titanium Dioxide*, 284 F.R.D. at 344.  These questions can be answered with common proof and without individual inquiries.  Whether Defendants entered into an agreement in violation of the antitrust laws focuses on Defendants' conduct, not the conduct of any individual class member, and will be answered with common evidence such as emails and corporate testimony.  "There is no indication that individual questions will arise in determining whether the defendants violated the Sherman Act." *Seaman*, 2018 WL 671239, at *4.  The same is true for impact and damages. Plaintiff alleges purely economic injuries caused by the No-Hire Agreement.  Proof of such injury is not individualized, but rather, depends on a common theory that pay structures at the defendant companies were systematically suppressed, thus affecting all class members.  *Id.* ("[T]hese antitrust impact theories and the proffered evidence in support of the theories are

-17-

common to all faculty: proving either theory for a single faculty class member would prove it for all, without the need for individual inquiry."); *In re High-Tech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167, 1192 (N.D. Cal. Oct. 24, 2013) ("[D]ocumentary evidence and expert reports using statistical modeling, economic theory, and data, [ ] demonstrate that common questions will predominate over individual questions in determining the impact of the antitrust violations."). Thus, just as with proving the existence of an unlawful agreement, proof of impact and damages focuses on common not individual questions: the class "will prevail or fail in unison." *Amgen Inc. v. Conn. Ret. Plans & Tr. Fund*, 568 U.S. 455, 459-60 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

Superiority. Class certification is the superior method for adjudicating Settlement Class Members' claims. Class treatment of the legal issues identified in this case would also be superior to other procedures for the handling of the claims. No other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending. Furthermore, this Court has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. The superiority requirement is also met.

## V.   CONCLUSION

For the above reasons, Plaintiff McAlear respectfully requests that the Court: (1) finally approve the Settlement as fair, reasonable, and adequate; (2) certify the Settlement Class; (3) approve the proposed Plan of Allocation; and (4) enter a Final Approval Order and Judgment.

2386991.2
3/28/22

Dated: March 28, 2022            Respectfully submitted,

_/s/     Anne B. Shaver_____

Anne B. Shaver
CA Bar No. 255928/CO Bar No. 39933
Dean M. Harvey
CA Bar No. 250298
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ashaver@lchb.com
dharvey@lchb.com
Local Rule 83.1(e) special appearance counsel

_/s/ Daniel Lyon_____
Robert M. Elliot
N.C. State Bar No. 7709
Daniel Lyon
N.C. State Bar No. 43828
ELLIOT MORGAN PARSONAGE, PLLC
426 Old Salem Rd.
Brickenstein-Leinbach House
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 724-3335
rmelliot@emplawfirm.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

*Counsel for Individual and Representative Plaintiff Joseph McAlear*

-19-

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)

I hereby certify that this memorandum complies with Civil Local Rule 7.2(f) as it is less than 30 pages and contains fewer than 8,400 words.

/s/ Anne B. Shaver
Anne B. Shaver

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

/s/ Anne B. Shaver
Anne B. Shaver