UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH McALEAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>nCINO, INC.,<br><br>Defendant. | CASE NO. 7:21-cv-47-M<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**<br><br>Fed. R. Civ. P. 23 |



Case 7:21-cv-00047-M Document 135 Filed 11/21/23 Page 1 of 25

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 4

- A. Attorneys' Fees ........ 4
- B. Expenses ........ 5
- C. Service Awards ........ 6

IV. ARGUMENT ........ 6

- A. Class Counsel's Request That the Court Award 33% of the Common Fund as Attorneys' Fees Is Reasonable ........ 6
  - 1. Class Counsel Obtained Significant Benefits for the Class (*Barber* Factor 8) ........ 6
  - 2. Class Counsel's Advocacy and Experience Secured the Settlement (*Barber* Factors 1, 2, 3, 6, 9, and 10) ........ 8
  - 3. Class Counsel Turned Down Other Opportunities to Work on This Case (*Barber* Factor 4) ........ 10
  - 4. The Requested Fees Are Reasonable In Light Of the Customary Fees for Like Work (*Barber* Factors 5 and 12) ........ 10
- B. A Lodestar Crosscheck Confirms the Fee Request Is Reasonable ........ 11
- C. Class Counsel's Expenses Are Reasonable and Appropriate ........ 13
- D. The Requested Service Award Is Reasonable ........ 14

V. CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page**

### CASES

*Abubaker v. Dominion Dental USA, Inc.*,
No. 1:19-CV-01050-LMB-MSN, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) .................... 12

*Adcock-Ladd v. Sec'y of Treasury*,
227 F.3d 343 (6th Cir. 2000) ................................................................................ 12

*Barber v. Kimbrell's Inc.*,
577 F.2d 216 (4th Cir. 1978) ........................................................................ 5, 6, 9, 10

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ................................................................................ 6, 14

*Blum v. Stenson*,
465 U.S. 886 (1984)................................................................................................ 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................ 4

*Brown v. Transurban USA, Inc.*,
318 F.R.D. 560 (E.D. Va. 2016) ............................................................................ 13

*Burke v. Shapiro, Brown & Alt, LLP*,
No. 3:14–CV–201 (DJN), 2016 WL 2894914 (E.D. Va. May 17, 2016)................................ 13

*Goldenberg v. Marriott PLP Corp.*,
33 F. Supp. 2d 434 (D. Md. 1998).......................................................................... 12

*Guippone v. BH S&B Holdings*, LLC,
No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ............................................ 15

*Hale v. CNX Gas Co., LLC*,
No. 1:10-CV-00059, 2018 WL 9963830 (W.D. Va. Aug. 24, 2018) ...................................... 13

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
No. CV JKB-16-3025, 2019 WL 3183651 (D. Md. July 15, 2019) .......................................... 8

*In re Abrams & Abrams, P.A.*,
605 F.3d 238 (4th Cir. 2010) .................................................................................... 6

*In re Cendent Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) .................................................................................. 12

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................... 8

*In re Cotton*,
No. 3:18-cv-00499-RJC, 2019 WL 1233740 (W.D.N.C. Mar. 15, 2019) ................................. 4

## TABLE OF AUTHORITIES
## (continued)

**Page**


*In re High-Tech Emp. Antitrust Litig.*,
289 F.R.D. 555 (N.D. Cal. 2013) ..... 15

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..... 16

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ..... 9

*In re Microstrategy, Inc.*,
172 F. Supp. 2d 778 (E.D. Va. 2001) ..... 12

*In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ..... 11

*In re Titanium Dioxide Antitrust Litig.*,
No. 10-CV-00318(RDB), 2013 WL 6577029 (D. Md. Dec. 13, 2013) ..... 8

*In re Vitamins Antitrust Litig.*,
No. MISC. 99-197(TFH), 2001 WL 34312839 (D.D.C. July 16, 2001) ..... 8

*In re: Urethane Antitrust Litig.*,
MDL No. 1616, 2016 WL 4060156 (D. Kan. July 29, 2016) ..... 8

*Kay Co. v. Equitable Prod. Co.*,
749 F. Supp. 2d 455 (S.D. W. Va. 2010) ..... 12

*Krakauer v. Dish Network, L.L.C.*,
No. 1:14-CV-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) ..... 4, 6, 7

*Nat'l Wildlife Fed. v. Hanson*,
859 F.2d 313 (4th Cir. 1988) ..... 12

*Phillips v. Triad Guar. Inc.*,
No. 1:09-cv-71, 2016 WL 2636289 (M.D.N.C. May 9, 2016)) ..... 4

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997) ..... 17

*Seaman v. Duke Univ.*,
No. 1:15-cv-00462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) ..... passim

*Sims v. BB&T Corp.*,
No. 1:15-CV-732, 2019 WL 1993519 (M.D.N.C. May 6, 2019) ..... 11

*Smith v. Krispy Creme Doughnut Corp.*,
No. 1:05-CV-00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ..... 5, 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 1876 (2012) .......................... 15

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
No. 3:08-CV-00271-JFA, 2012 WL 13008138 (D.S.C. July 31, 2012) .............................. 6, 14

**RULES**

Fed. R. Civ. P. 23(h) ........................................................................................................ 4, 5

**TREATISES**

1 Alba Conte, *Attorney Fee Awards* § 2:19 (3d ed. 2018) ............................................................ 5

5 William B. Rubinstein et al., *Newberg on Class Actions* § 17:13 (5th ed. 2019) ....................... 6

**OTHER AUTHORITIES**

*Manual for Complex Litigation* § 14.121 (4th ed. 2018) ............................................................... 4

Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ........................................................................................................................... 17

## I. INTRODUCTION

Class Counsel secured a settlement of $2,190,000 and a representation that defendant nCino, Inc. ("nCino" or "Defendant") will not enter into, maintain, or enforce any agreement with any other employer that violates the antitrust laws. The settlement, which this Court preliminarily approved on October 2, 2023, Dkt. No. 132, is a strong result when weighed against the risks of further litigation. In keeping with the Fourth Circuit's approach to fee awards, Class Counsel seeks one-third of the common fund, or $730,000, which represents a substantial discount on Class Counsel's actual lodestar of $1,286,786.00. Consistent with this Court's guidance in its order granting final approval to the prior settlements between Plaintiff and Live Oak Bankshares, Inc. ("Live Oak") and Apiture, Inc. ("Apiture"), Dkt. No. 92 at 3, Class Counsel's request for fees pertains only to time spent since the Court granted final approval to the other settlements. Class Counsel also seek reimbursement for litigation expenses of $92,332.21.

Class Counsel also requests a service award of $90,000 for Mr. McAlear. Since final approval of the other settlements, Mr. McAlear engaged in substantial discovery efforts, including searching thousands of emails, text messages, and documents—which he facilitated, as opposed to an outside vendor—as well as contributing to Class Counsel's analysis and negotiations regarding appropriate custodians for electronic document discovery. Mr. McAlear also engaged in settlement negotiations, including attending the mediation that ultimately led to settlement of this case. Finally, and sadly, Mr. McAlear continues to face repercussions for bringing this lawsuit—he cannot obtain a job locally in Wilmington, has had to change careers, and has become associated with the lawsuit in the Wilmington community. Declaration of Joseph

McAlear ("McAlear Decl.") ¶¶ 7-9. These factors support granting Mr. McAlear the requested service award.

## II. BACKGROUND

Plaintiff filed the complaint on March 12, 2021 alleging that Live Oak, nCino, and Apiture (hereinafter, the "Defendants") conspired to restrain competition and reduce compensation for their employees in Wilmington, North Carolina (the "No-Hire Agreement"). Dkt. No. 1 ¶ 1. The complaint alleges that Defendants are the leading employers for financial technology employees in Wilmington and that absent the No-Hire Agreement, the Defendants would have recruited and hired employees from each other, driving employee pay up. *Id*. ¶¶ 20, 25. Plaintiff filed an Amended Complaint on September 29, 2021. Dkt. No. 35.

Plaintiff reached settlement agreements with Live Oak and Apiture in October 2021. Dkt. Nos. 39-1 & 39-2. After a robust notice process and favorable response from the settlement class, the Court granted final approval to those settlements on April 28, 2022. Dkt. No. 92.

The civil case against nCino, the remaining non-settling defendant, continued thereafter. The parties proceeded with document discovery, including from the parties themselves and from now-third parties Live Oak and Apiture. In response to nCino's requests for production, Plaintiff McAlear provided over 15,000 documents, which Class Counsel reviewed for relevancy and privilege, ultimately producing over 1,700 documents to nCino, including emails, social media posts, and text messages. Decl. of Daniel Lyon ISO Unopposed Mot. for Attorneys' Fees, Costs, and Service Award ("Lyon Decl.") ¶ 2. Live Oak produced approximately 25,700 pages of documents; Apiture produced approximately 36,368 pages of documents; and nCino produced approximately 2,500 pages of documents, including centrally located corporate organization and compensation policy documents, and dozens of data files containing its employee data. *Id*. Class

Counsel spent over 1,500 hours reviewing and analyzing the document productions. *Id.* ¶¶ 4, 7. Plaintiff's retained statistical expert analyzed employee data from all three companies, and Class Counsel engaged in several data-specific meet and confers to procure additional relevant data and obtain answers to the expert's questions regarding the data. *Id.* ¶ 8.

Plaintiff and nCino simultaneously spent several months intensely negotiating custodians and search terms to identify relevant documents from nCino's electronic sources such as email, text message, and company chat platforms. Lyon Decl. ¶ 6. Plaintiff also took the deposition of an nCino corporate representative about nCino's (1) compensation practices and (2) corporate organization. *Id*. The parties had reached agreement on custodians and were negotiating search terms to enable nCino's collection and review of potentially responsive documents, when the parties agreed to attend a mediation with experienced mediator Jonathan Harkavy to see if resolution of the case was possible. *Id*. ¶¶ 6, 9. In the meantime, the DOJ terminated its criminal investigation of nCino without seeking an indictment. *Id*. ¶ 5.

The parties attended mediation with Mr. Harkavy on May 25, 2023. Lyon Decl. ¶ 9. Unlike the prior mediation that resulted in settlements with Live Oak and Apiture, both parties in this mediation had the benefit of robust data analysis and document discovery to inform their respective positions. The parties exchanged letters, fully apprising the other party of their legal arguments and the best evidence in support, and also submitted confidential mediation briefs to Mr. Harkavy. *Id*. However, the parties were unable to reach agreement at the mediation. *Id*. Mr. Harkavy continued conversations with counsel for both parties thereafter, culminating in a mediator's proposal to resolve the matter for $2,190,000, which both parties accepted. *Id*. Thereafter, the parties negotiated the other terms of the settlement and executed the agreement on August 21, 2023.

The Court granted preliminary approval to the settlement on October 2, 2023. Dkt. No. 132. The Court-appointed settlement administrator, JND Legal, sent notice to the class on November 6, 2023. Class Counsel's request for attorneys' fees and costs, and a service award for Mr. McAlear, was described in the notice. JND will also post a copy of this brief and supporting materials on the settlement website so that class members may easily view it. The deadline for class members to opt out of or object to the settlement is December 6, 2023. Class Counsel's motion for final approval of the settlement will be due January 1, 2024, and the final approval hearing is scheduled for January 29, 2024. Dkt. No. 132.

## III. <u>LEGAL STANDARD</u>

### A. <u>Attorneys' Fees</u>

"[L]awyer[s] who recover[] a common fund . . . [are] entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); Fed. R. Civ. P. 23(h). In a common fund case such as this, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). "District courts in the Fourth Circuit 'overwhelmingly' prefer the percentage method in common-fund cases . . . ." *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 6305785, at *2 (M.D.N.C. Dec. 3, 2018) (quoting *Phillips v. Triad Guar. Inc.*, No. 1:09-cv-71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016)); *see also Manual for Complex Litigation* § 14.121 nn.483-85 (4th ed. 2018) (collecting cases). "Contingent fees of one-third are common in this circuit in cases of similar complexity." *Seaman v. Duke Univ*., No. 1:15-cv-00462, 2019 WL 4674758, at *3 (M.D.N.C. Sept. 25, 2019); *Krakauer,* 2018 WL 6305785, at *3 (same); *In re Cotton*, No. 3:18-cv-00499-RJC, 2019 WL 1233740, at *4 (W.D.N.C. Mar. 15, 2019) (same).

Twelve factors guide the reasonableness of a fee award: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Seaman*, 2019 WL 4674758, at *2 (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). These are commonly referred to as "the *Barber* factors." In addition, a court may also conduct "a lodestar cross-check that compares the requested contingent fee award against a fee calculated based on hours spent at prevailing market rates." *Id.*

**B. <u>Expenses</u>**

The Court may also award nontaxable costs from the common fund. Fed. R. Civ. P. 23(h). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Seaman*, 2019 WL 4674758, at *6 (quoting *Smith v. Krispy Creme Doughnut Corp.*, No. 1:05-CV-00187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007)). Reimbursable expenses include legitimate costs associated with prosecuting the case, such as expert fees, travel, long-distance and conference telephone calls, postage, delivery services, settlement costs, and computerized legal research. *Id.*; *see also* 1 Alba Conte, *Attorney Fee Awards* § 2:19 (3d ed. 2018)).

### C. <u>Service Awards</u>

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (citation omitted). Such awards are "common . . . in recognition of the time and effort [class representatives] have invested for the benefit of the class." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-CV-00271-JFA, 2012 WL 13008138, at *6 (D.S.C. July 31, 2012). Other factors commonly considered by courts include the class representative's actions to protect the class, the degree to which the class has benefited, the risk (financial and otherwise) assumed, the notoriety and personal difficulties encountered, the duration of the litigation, the personal benefit (or lack thereof) enjoyed by the class representative from litigation, the ultimate recovery to the class, and the sums awarded in similar cases. *See* 5 William B. Rubinstein et al., *Newberg on Class Actions* § 17:13 (5th ed. 2019).

## IV. <u>ARGUMENT</u>

### A. <u>Class Counsel's Request That the Court Award 33% of the Common Fund as Attorneys' Fees Is Reasonable</u>

In the Fourth Circuit, attorneys' fees of one-third of the common fund is considered a presumptively reasonable benchmark. *See Seaman*, 2019 WL 4674758, at *3; *Krakauer,* 2018 WL 6305785, at *3. Here, Class Counsel seek the benchmark amount. All *Barber* factors favor granting Class Counsel's request.

#### 1. <u>Class Counsel Obtained Significant Benefits for the Class (*Barber* Factor 8)</u>

The benefit obtained for the class is the most significant factor supporting the requested fee award. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010) (result obtained is

"the most critical factor in determining the reasonableness of a fee award" (citation omitted)); *Seaman*, 2019 WL 4674758, at *3 ("[t]he excellent result obtained" supported a finding that the requested fee was reasonable); *Krakauer*, 2018 WL 6305785, at *3 (same).

Here, Class Counsel secured a settlement totaling $2,190,000 for approximately 1,926 class members.[1] *See* Dkt No. 128 ("Mot. Prelim. App.") at 1. As set forth in Class Counsel's motion for preliminary approval, this amount is in line with the recoveries in similar no-hire cases. *See id.* at 10-11 (comparing recovery to similar cases). It also ensures relief for the class that was anything but guaranteed: although Live Oak and Apiture settled early in the process, nCino adamantly denied wrongdoing, contending that it was differently situated than the other two companies. *See* Def. nCino's Response in Supp. of Pl.'s Mot. for Prelim. Approval ¶ 4, Dkt. No. 131. Specifically, nCino argued that its data refuted antitrust impact both in terms of hiring rates and compensation, and that any alleged hiring agreement with Live Oak was ancillary to and necessary for the procompetitive activity of establishing nCino as a new company, spun off from Live Oak, and to the two companies' ongoing business relationship. *See id*. ¶¶ 3-4. If nCino prevailed on this argument, Plaintiff's burden of proof would have been greater.

Moreover, the settlement provides for valuable non-monetary benefits to the class because nCino has agreed not to enter into, maintain, or enforce any agreement with any other employer that violates the antitrust laws, thereby ensuring future mobility and job opportunities. Given that the United States Department of Justice elected not to file a criminal indictment based on its investigation, this relief is notable for ensuring compliance with the antitrust laws among Wilmington's leading employers for financial technology services. *See Hutton v. Nat'l Bd. of*

[1] This is in addition to the $4.65 million already secured from the settlements with Live Oak and Apiture.

*Exam'rs in Optometry, Inc.*, No. CV JKB-16-3025, 2019 WL 3183651, at *7 (D. Md. July 15, 2019) (finding fee request of 30% of the settlement fund fair and reasonable in part due to the "substantial but unquantifiable value of the injunctive relief provided" by the settlement).

Class Counsel's fee request is also in line with fee awards granted in similar complex antitrust class actions. *See, e.g.*, *Seaman*, 2019 WL 4674758, at *4 (in no-poach case, one-third); Order Granting Mot. for Atty. Fees, *In re Ry. Indus. Emp. No-Poach Litig.*, MDL No. 2850 (W.D. Pa. Aug. 26, 2020) (Lyon Decl., Ex. A) (in no-poach case, one-third); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318(RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (one-third); *In re: Urethane Antitrust Litig.*, MDL No. 1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (one-third); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011) (one-third); *In re Vitamins Antitrust Litig.*, No. MISC. 99-197(TFH), 2001 WL 34312839, at *9 (D.D.C. July 16, 2001) (over one-third).

### 2. **Class Counsel's Advocacy and Experience Secured the Settlement (*Barber* Factors 1, 2, 3, 6, 9, and 10)**

The settlement is the result of Class Counsel's skilled advocacy for the class, both here and in other no-poach cases. Class Counsel invested significant time in prosecuting this case. Once Plaintiff settled with Live Oak and Apiture, Class Counsel immediately attempted to move the litigation against nCino forward by seeking discovery from it and capitalizing on the cooperation from Apiture and Live Oak. Lyon Decl. ¶ 3. Given the criminal investigation, however, Class Counsel had to negotiate ways to secure the evidence needed to support class certification even while certain elements of discovery pertinent to the potential criminal action were stayed. *Id.*; *see also* Dkt. No. 97. Class Counsel did so successfully, gaining access to pivotal wage data and centrally located corporate organization and compensation policy

documents, which Plaintiff's expert then had to analyze to estimate the extent to which the alleged misconduct impacted hiring and suppressed class pay. Lyon Decl. ¶ 3.

In addition to devoting thousands of hours to reviewing documents from the cooperating Defendants, Class Counsel spent months intensely negotiating custodians and search terms with skilled and experienced opposing counsel to locate responsive electronically-stored information from nCino and also took the deposition of an nCino corporate representative about nCino's compensation practices and corporate organization. Lyon Decl. ¶ 6; *see In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). These discovery efforts paved the way for settlement. Lyon Decl. ¶ 9. Prior to mediation, Class Counsel engaged in extensive arms'-length conversations with nCino's counsel about the merits of the case; and following mediation, engaged in repeated discussion with mediator Harkavey culminating in the Parties' ultimate agreement to the mediator's proposal and settlement. *Id*. Class Counsel then moved for preliminary approval of the settlement, and has also overseen distribution of notice to the class, including creation of a dedicated website and coordinating the three Defendants' provision of data to the Settlement Administrator. *Id*.

Further, Class Counsel's specialized expertise in the realm of no-poach cases also helped secure the settlement, as well as Class Counsel's prior experience with complex class action litigation and antitrust cases. *See* Lyon Decl. ¶¶ 15-16; Decl. of Dean M. Harvey ISO Unopposed Mot. for Attorneys' Fees, Costs, and Service Award ("Harvey Decl.") ¶ 2. *Cf. Barber*, 577 F.2d at 226 n.28 (court should consider "the skill required to properly perform the legal services rendered," "the novelty and difficulty of the questions raised," and "the experience, reputation and ability of the attorney"). Class Counsel have been lead or co-lead counsel in nearly all

successful no-poach class actions nationwide, which experience and reputation enabled them to obtain this result speedily for the class. Lyon Decl. ¶¶ 15-16; Harvey Decl. ¶ 2, Ex. A.

### 3. <u>Class Counsel Turned Down Other Opportunities to Work on This Case (*Barber* Factor 4)</u>

Another important consideration is "the attorney's opportunity costs in pressing the instant litigation." *Barber*, 577 F.2d at 226 n.28. The attorneys and staff on this case have worked over 2,200 hours on this file to date. Lyons Decl. ¶ 18; Harvey Decl. ¶ 5. Based on their experience administrating class action settlements of this size, Class Counsel estimates spending another approximately 50 hours on seeing this settlement to completion. Lyon Decl. ¶ 21. To do this work, Class Counsel had to forego working on other matters. *Id*. ¶ 22; Harvey Decl. ¶ 12.

### 4. <u>The Requested Fees Are Reasonable In Light Of the Customary Fees for Like Work (*Barber* Factors 5 and 12)</u>

Class Counsel have expended more than 2,200 hours prosecuting the case since the settlement with Live Oak and Apiture was finally approved, for a total lodestar of $1,286,786.00. Lyon Decl. ¶ 18; Harvey Decl. ¶ 5. The hours expended and the hourly rates are reasonable.

<u>Hours Expended</u>: The number of hours is reasonable in light of the complexity of this case, the stage of discovery reached, and vigorous settlement negotiations. Unlike with respect to the settlements with Live Oak and Apiture, Class Counsel had to review tens of thousands of documents, review and analyze employee data, and engage in contentious meet and confers regarding appropriate document custodians. Lyon Decl. ¶¶ 2-8. Nevertheless, Class Counsel have worked efficiently, spending time and resources only as necessary.

Class Counsel provide herewith a summary of the time performed by each person who has worked on this case since it was filed. Lyon Decl. ¶ 17-18; Harvey Decl., ¶ 5 & Ex. B. Class Counsel expended time and expenses efficiently and assigned work to those attorneys with the

lowest hourly rate who could competently perform the task assigned. For example, Class Counsel had one partner engage with the expert economist on data analysis, one associate draft discovery communications with opposing counsel, and two staff attorneys perform document review and analysis. Harvey Decl. ¶ 5. Further, Class Counsel will expend additional time after this motion to oversee the notice program, respond to Class Member inquiries, prepare and file a motion for final approval of the settlement, and oversee settlement distribution to Class Members (estimated based on prior experience in no-poach cases to involve 50 additional hours, not accounted for in the lodestar presented here). Lyon Decl. ¶ 21.

Hourly Rates: The rates are also reasonable. For purposes of the lodestar, Class Counsel have billed attorneys at current market rates. Harvey Decl. ¶ 7; Lyon Decl. ¶ 20. These rates are in line with the national market rate for attorneys in complex antitrust litigation. *See Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) (noting that "a national market rate is appropriate for matters involving complex issues requiring specialized expertise" and approving hourly rates from $650-$1,060 for attorneys with over 5 years' experience). Additionally, other courts have approved these rates for Class Counsel's attorneys. *See* Harvey Decl. ¶ 7 (citing cases).

### B. A Lodestar Crosscheck Confirms the Fee Request Is Reasonable

Although not required, some courts in this Circuit also employ a lodestar multiplier cross-check to further evaluate a fee request. *See, e.g.*, *Smith*, 2007 WL 119157, at *3; *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264 (E.D. Va. 2009). In doing so, the Court looks at the number of hours the attorneys worked by a billing rate to determine whether the awarded fee is reasonable. *See Mills Corp.*, 265 F.R.D. at 264. The lodestar figure should be based on rates in similar actions "where the market for class action attorneys is nationwide and populated by very

experienced attorneys with excellent credentials," even if they are "high for [the] locality." *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001). Courts have recognized that it can be appropriate to apply national rates or out-of-town rates to fee awards in cases, such as this one, involving specialized and complex areas of law and where area attorneys may not have the resources to prosecute the case on a contingent basis. *See, e.g., Nat'l Wildlife Fed. v. Hanson*, 859 F.2d 313 (4th Cir. 1988) (applying Washington, D.C. rates to environmental litigation filed in Raleigh, N.C.); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343 (6th Cir. 2000) (finding abuse of discretion to apply lower local rates to fee award instead of rate customarily charged in Washington, D.C.).

Courts are often asked to assess whether a fee award that would result in a multiplier on a lodestar amount is reasonable. In doing so, "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 470 (S.D. W. Va. 2010) (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 n.6 (D. Md. 1998)); *see also In re Cendent Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (citation omitted)).

Here, the Court's task is simpler because the requested fee amount results in a negative multiplier. As the accompanying declarations of counsel attest, Class Counsel have expended over 2,200 hours on this litigation, for a cumulative lodestar of $1,286,786.00. *See* Lyon Decl. ¶ 18; Harvey Decl. ¶ 5. As a result, the fee requested is 57% of Class Counsel's lodestar. In situations like this, courts have little trouble finding the requested fee to be reasonable. *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-CV-01050-LMB-MSN, 2021 WL 6750844, at *6 (E.D. Va. Nov. 19, 2021) (approving requested fee, which represented a negative multiplier of

0.625 on Class Counsel's lodestar); *Hale v. CNX Gas Co., LLC*, No. 1:10-CV-00059, 2018 WL 9963830, at *1 (W.D. Va. Aug. 24, 2018) (approving the requested fee of 32.3 percent of the settlement fund where the lodestar cross-check yielded a negative multiplier); *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) (approving fee in case with 0.77 multiplier and gathering cases in which courts have approved fees with negative multipliers, noting that such a multiplier suggests a fee request is reasonable); *Burke v. Shapiro, Brown & Alt, LLP*, No. 3:14–CV–201 (DJN), 2016 WL 2894914, at *6 (E.D. Va. May 17, 2016) ("[T]he fact that Class Counsel requested [a fee below its lodestar] . . . further weighs in favor of a finding that the hours expended were reasonable.").

### C. Class Counsel's Expenses Are Reasonable and Appropriate

Class Counsel's reimbursable expenses total $92,332.21. Harvey Decl. ¶ 9. The largest expense relates to the Plaintiff's economic expert. *Id.* ¶ 10. This amount is reasonable in light of the critical role that expert economic analysis plays in class action antitrust litigation where experts establish classwide impact and measure damages. *See, e.g.*, *Seaman*, 2019 WL 4674758, at *6 (finding reimbursement of expert fees in the amount of over $2.9 million appropriate where experts "opine[d] on the economic indicia of collusion; on how Defendants' internal pay systems and structures would have spread the effect of the no-poach agreement to all Class Members; and on complex economic models to estimate damages"). Here, unlike in the prior settlements with Live Oak and Apiture where Plaintiff's consultants compared data to publicly available regional wage data for software engineers, Plaintiff's data experts enabled Plaintiff to engage in informed settlement negotiations, while also laying the groundwork to meet his burden at class certification and trial if the case did not settle. Lyon Decl. ¶ 7. This required intensive

communication between Class Counsel and the experts—as well as with nCino and the third parties to understand their data and identify (and correct) problems with it. *Id.* ¶ 8.

The remaining litigation expenses include mediation, legal research, deposition transcripts, and hosting the electronic document database. Harvey Decl. ¶ 11, Ex. C (cost summary). These are reasonable, reimbursable costs. *Seaman*, 2019 WL 4674758, at *6.

**D. <u>The Requested Service Award Is Reasonable</u>**

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry*, 807 F.3d at 613 (citation omitted). Such awards are "common . . . in recognition of the time and effort [class representatives] have invested for the benefit of the class." *Temp. Servs., Inc.*, 2012 WL 13008138, at *6. Service awards are particularly appropriate in labor antitrust class actions, where named plaintiff employees take substantial risks in suing an employer to vindicate fundamental public policies.

Courts have recognized that a second service award is appropriate where the named plaintiff has continued to invest time on behalf of the class subsequent to an initial settlement, and where no other class members have come forward to share the burden. *High-Tech*, 2015 WL 5158730, at *17 ($100,000 to each of four named plaintiffs in second settlement, after granting service awards of $20,000 each in first settlement); Order Granting Mot. for Atty. Fees & Service Award, *Binotti v. Duke*, No. 20-cv-470 (M.D.N.C. Aug. 30, 2021) (Lyon Decl., Ex. B) ($65,000 to single plaintiff who was the only one to step forward to continue the litigation, in follow-on case after granting $125,000 to different plaintiff in original case).

Since final approval of the settlements with Live Oak and Apiture, Mr. McAlear dedicated approximately 115 hours to securing the benefits that the settlement confers on the class. McAlear Decl. ¶ 6. Mc. McAlear has devoted extensive time to discovery efforts, reviewing hundreds of LinkedIn, Hotmail, and Gmail messages in addition to thousands of personal text messages. *Id*. Notably, with Class Counsel's assistance, Mr. McAlear ran searches himself to minimize costs to the class of hiring an outside vendor. Lyon Decl. ¶ 13. In addition, Mr. McAlear assisted Class Counsel in formulating discovery requests to nCino and evaluating nCino's responses thereto. McAlear Decl. ¶ 6; Lyon Decl. ¶ 13; *see also Guippone v. BH S&B Holdings*, LLC, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Courts recognize the important factual knowledge that named plaintiffs bring to employment class actions, including information about employer policies and practices that affect compensation."). Finally, Mr. McAlear was active in the mediation and all subsequent settlement negotiations. McAlear Decl. ¶ 6; Lyon Decl. ¶ 13.

Though the class includes thousands of other employees, no others have stepped forward to risk their personal reputation or jobs for the class, even after the local community learned about the case. That is another factor favoring the requested service award, as Mr. McAlear was the only class member willing to perform the "public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (en banc), *cert. denied,* 132 S. Ct. 1876 (2012) (citation omitted). Without Mr. McAlear's initiative, it is likely the violation at issue never would have been remedied. *Cf. Seaman*, 2019 WL 4674758, at *7*; In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 563 (N.D. Cal. 2013) (observing that the "Supreme Court has long recognized that class actions serve a valuable role in the enforcement of antitrust laws").

As the Court previously recognized, Mr. McAlear risked his professional reputation and workplace retaliation by serving as a named plaintiff in this case, which takes place in a small community and has continued to receive press attention.[2] Unfortunately, time has not healed all wounds: since the prior settlements, Mr. McAlear continues to face repercussions for bringing this lawsuit—and, presumably, for continuing the lawsuit by going after nCino, the largest of the three Defendants. His relationships with former coworkers and friends have been impacted. McAlear Decl. ¶ 7. There are few employers for Mr. McAlear's skill set in the region, and all are or will be aware of his role in bringing this case: if one performs a Google search with his name, the lawsuit appears in the top four results. *Id.* ¶ 9. In addition, Mr. McAlear's current employer, which is based outside of Wilmington and allows Mr. McAlear to work remotely, has announced forthcoming layoffs. *Id.* ¶ 8. If Mr. McAlear if subject to those layoffs, he will be forced again to seek work in Wilmington, where, given his participation in this lawsuit, his prospects are slim. *Id*.

Mr. McAlear's exposure and the risk of retaliation strongly favor an adequate service award. *See, e.g.*, *Seaman*, 2019 WL 4674758, at *7 (recognizing that plaintiff "put her professional career on the line when she came forward"); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (recognizing that

[2] *See*, *e.g.*, Amy Passaretti Willis, *nCino agrees to settle antitrust suit for $2.2M, denies claims of wrongdoing*, Port City Daly (Sept. 7, 2023), https://portcitydaily.com/latest-news/2023/09/07/ncino-agrees-to-settle-antitrust-suit-for-2-2m-denies-claims-of-wrongdoing/; Michael Pratts, *Lawsuit filed over 'gentleman's' no-hire agreement between nCino, Live Oak Bank*, WECT (Mar. 16, 2021), https://www.wect.com/2021/03/16/lawsuit-filed-over-gentlemans-no-hire-agreement-between-ncino-live-oak-bank/; Lauren Ohnesorge, *Live Oak Bank and its spin-off accused of illegal no-poach deal*, Triangle Bus. J. (Mar. 15, 2021), https://www.bizjournals.com/triangle/news/2021/03/15/live-oak-bank-federal-lawsuit-no-poach-agreement.html.

named plaintiffs received considerable media coverage and were likely to be viewed as "troublemakers" by future employers).[3]

## V. CONCLUSION

For the above reasons, Class Counsel respectfully request that the Court award $730,000 in attorneys' fees, $92,332.21 in costs, and $90,000 as a service award to Mr. McAlear.

Dated: November 21, 2023

Respectfully submitted,

*/s/ Daniel C. Lyon*

Robert M. Elliot
N.C. State Bar No. 7709
Daniel C. Lyon
N.C. State Bar No. 43828
ELLIOT MORGAN PARSONAGE, PLLC
426 Old Salem Rd.
Brickenstein-Leinbach House
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 724-3335
rmelliot@emplawfirm.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

[3] *See also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997) (recognizing that in an employment case, "the plaintiff is frequently a present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril"); Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395, 396-397 (2006) (in addition to case-related responsibilities, "[e]mployees, former and current, take huge risks when they agree to be named plaintiffs in a class action bringing legal claims of unlawful bad acts by employers. Retaliation, isolation, ostracism by co-workers, 'black listing' by future employers, emotional trauma, and fear of having to pay defendants' legal fees are among the most obvious").

*/s/ Dean M. Harvey*
Dean M. Harvey
CA Bar No. 250298
Anne B. Shaver
CA Bar No. 255928/CO Bar No. 39933
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
dharvey@lchb.com
ashaver@lchb.com

Jessica A. Moldovan
NY Bar No. 5615943
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
jmoldovan@lchb.com

Local Rule 83.1(e) special appearance counsel

*Counsel for Individual and Representative Plaintiff Joseph McAlear*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)**

I hereby certify that this memorandum complies with Civil Local Rule 7.2(f) as it is less than 30 pages and contains fewer than 8,400 words. This memorandum contains 5,146 words.

*/s/ Daniel C. Lyon*
Daniel C. Lyon

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/ Daniel C. Lyon*
Daniel C. Lyon